## Case No. 4,862a.

### FLEMING v. NORTHAMPTON NAT. BANK.

[62 How. Pr. 177.]

Circuit Court, S. D. New York. Nov. 1881.

Bates & Hernz, for plaintiff.

Peckham & Tyler, for the bank,

SHIPMAN, District Judge. It is now well settled that, although there may be found fragmentary evidence in favor of the party upon whom the burden of proof is imposed, yet, if the testimony, assuming it to be true, and the inferences which may fairly be drawn therefrom, are, in the opinion of the court, entirely insufficient to authorize the jury to find a verdict in favor of the party upon whom the onus of proof is cast, it is the duty of the court to direct the jury what verdict to render. This rule does not imply that the court should weigh the credibility of opposing witnesses, or determine whether the uncontradicted witnesses are to be credited; but conceding to all the evidence offered the greatest probative force which, according to the law of evidence, it is fairly entitled to, the court is to determine whether there is any substantial evidence which can justify a verdict in favor of the party in whose favor the evidence is offered or received. Now, in this case these bonds were left by Mr. Fleming with the Northampton Bank as collateral security for the payment of a loan. It is in proof, or sufficiently in proof, so that there can be no doubt upon the subject that these bonds, together with a very great amount of other bonds and valuable personal property, were taken by robbers from this bank on the morning of the 26th of January, 1876, and by superior force, in the absence of any of the officers or the watchman of the bank; that subsequently this note matured; that payment was tendered and refused; and that demand was made for the bonds.

Now, what is the law upon the subject of bailees of collateral securities? The law is that banks who have in their possession collateral security for the payment of loans are called upon to take the same care that good business men, or persons or corporations of their class, ordinarily take of such bonds. That is, in the old phrase of the law, they are liable for want of ordinary care. It is proper, as was stated by the court in Case of Essex Bank, 17 Mass. 479, that higher obligation of care should be imposed upon banks, which have a very large amount of property

and assets, than should be imposed upon private individuals, and therefore use the phrase, "good business people of their class who deal in sureties of this sort and who hold securities of this sort." This being so.—the state of the facts being, as I have stated, that the property was taken from them by superior force,—there is an obligation upon the plaintiff to prove in some way lack of ordinary care; and if he does not prove it, then he has not made out his case. The only proof in this case of any consequence, as it seems to me. is that there was no watchman present; that the watchman went away at four o'clock. This man watched this as well as the other banks in the neighborhood, going on at ten o'clock at night and leaving at four o'clock the next morning. The fact would seem to me to be very slight evidence from which to infer negligence or want of ordinary care, and so slight that a jury would not be justified in finding a verdict for the plaintiff upon that fact alone. It is the important fact which is here presented. I think there is no case made out by the plaintiff, and I therefore direct a verdict for the defendant.